UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

04 Cr. 336 (PKC)

     -against-

MEMORANDUM
<u>AND ORDER</u>

ROBERT SPEED,
                          Defendant.
------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

          Defendant Robert Speed moves, pursuant to Rule 29, Fed. R. Crim. P., for a judgment of acquittal after trial on the crime charged in Count Three of the indictment (S3 04 Cr. 336), carrying and use of a firearm in relation to a crime of violence and/or possession of a firearm in furtherance of a crime of violence.  He asserts that the government failed to prove venue in this District as required by Article III, Section 2, of the Constitution, the vicinage provision of the Sixth Amendment and Rule 18, Fed. R. Crim. P.

          The evidence at trial established that Speed and cooperating witness Darrin Riley operated a robbery and burglary team in Manhattan, Long Island and New Jersey.[1] Central to the success of the enterprise was the use of Joe Star, a jeweler in the "diamond district" located on 47th Street in midtown Manhattan, who supplied the names of customers as potential robbery or burglary victims and purchased stolen items.

---

[1]  The indictment also charged transportation and sale of property from a Connecticut burglary and conspiracy to rob a drug trafficker in Manhattan as racketeering acts, but the jury found both of these acts to have not been proven.

Defendant Speed was found guilty by a jury on seven of eight counts of the indictment, namely: Count One: a substantive violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); Count Two: a RICO conspiracy, 18 U.S.C. § 1962(d); Count Three: carrying and use of a firearm in relation to a crime of violence and/or possession of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii); Count Four: possession of a firearm after conviction of a felony, 18 U.S.C. § 922(G)(1); Count Five: conspiracy to transport stolen goods in interstate commerce and to sell stolen goods, 18 U.S.C. §§ 371, 2314, 2315; Count Six: interstate transportation of property stolen in New Jersey, 18 U.S.C. § 2314; and Count Seven: sale in New York of property stolen in New Jersey, 18 U.S.C. § 2315.  On this motion, defendant does not challenge his conviction on any count other than Count Three.

Count Three alleges that Speed with the requisite state of mind "during and in relation to a crime of violence . . . did use and carry, and aid and abet the use and carrying of firearms and did possess, and aid and abet the possession of, firearms, in furtherance of [a] crime of violence, and which firearms were brandished."  The government asserts that the factual premise of the charge is the robbery and conspiracy to rob an occupied home at 38 Thistle Lane, Warren Township and the display of a firearm to one of the victims, Olinda Silva, in order to intimidate her into complying with the defendant's directives.  Defendant argues that because the robbery and, in his view of the evidence, the carrying and use during or in relation to a crime of violence or the possession in furtherance of a crime of violence occurred in the District of New Jersey and not within this District, venue has not and cannot be proven.

Section 924(c)(1)(A), the statutory provision underlying the charge in Count Three, provides in relevant part as follows:

> [A]ny person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years. . . .

Without objection, the jury was instructed that "you must further find that the defendant used or carried a firearm during and in relation to, or possessed a firearm in furtherance of, one or more of the conspiracies to commit robberies, or one or more of the robberies, in Count One." (Tr. at 1737) The jury was further instructed that "[t]o possess a firearm in furtherance of the crime means that the firearm helped forward, advance, or promote the commission of the crime. Mere possession of the firearm at the scene of the crime is not sufficient under this definition. The firearm must have played some part in furthering the crime in order for this element to be satisfied." (Tr. at 1740) The term "brandish" was also defined. (Tr. at 1740) The entirety of the instruction on Count Three was delivered without objection or exception.

On this motion, I must view the evidence in the light most favorable to the government. United States v. Rosa, 17 F.3d 1531, 1542 (2d Cir. 1994), cert. denied, 513 U.S. 879 (1994) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)). The government need only prove venue by a preponderance of the evidence. See United States v. Ramirez, 420 F.3d 134, 139 (2d Cir. 2005), cert. denied sub nom., Vitug v. United States, 2006 U.S. LEXIS 709 (Jan. 9, 2006).

Co-conspirator Riley testified that he and Speed developed a multi-year

business relationship with Joe Star of J & S Jewelers on 47th Street in Manhattan. (Tr. at 120-121, 236-38, 306). At first, Star purchased merchandise from Riley and Speed that had been stolen. (Tr. at 120-121). Over time, Star began to feed Riley and Speed the names of his jewelry customers whom he viewed as good candidates for a robbery or burglary. (Tr. at 188, 239, 291) With respect to 38 Thistle Lane, Star gave Riley and Speed the address and phone number and told them that the owner either bought jewelry from him or worked with him. (Id.) Star also said that the home owners would be out attending a wine tasting event on the night of the planned home invasion. (Id.) Riley and Speed discussed the matter and decided that, "just in case we had, we was bringing, you know, the guns anyway, just in case somebody was home." (Tr. at 290)[2]

Riley confirmed that, as they had planned, each brought a gun with him to the site of the home invasion. (Tr. at 293) Riley testified that Speed rented a car—a Caravan or Astrovan—on Long Island and that they drove through Manhattan on their way to New Jersey. (Tr. at 292)

Ms. Silva described how she had been previously employed by the home owner as a nanny and that on the night of the robbery, May 20, 2001, she was visiting with the present nanny and the family's three children, ages eight, seven and four. (Tr. at 583-84, 590) Ms. Silva was grabbed from behind by the taller of the two masked intruders who placed his hand over her mouth. She described the physiques of the taller and shorter intruders and at trial the jury had the opportunity to observe that Riley is taller than Speed.

---

[2] Viewed in a light most favorable to the government, the evidence supported the conclusion that the defendant did foresee the possibility that the home would be occupied and this was the very reason he and Riley decided to bring guns. The defendant's argument that, at most, the government proved a conspiracy to commit a burglary, which is not a "crime of violence" and cannot support a section 924(c)(1) charge, is meritless.

Ms. Silva at various junctures struggled and resisted the pair of invaders. (Tr. at 584-86, 588) She tried to use the phone or press the alarm. "[T]he short guy grabbed me in the, by the dining room door, and I was struggling with him, trying to escape from him. And in that moment, I saw that the short guy had a gun." (Tr. at 588) "[I]t went like that, you know, fall down in the floor and it went just to the other side, and that moment, I knew that it was, I was in danger, he could kill me." (Id.) The present and former nannies had their hands bound and tape placed over their mouths and were kept in a closet with the children. (Tr. at 589)

The day following the robbery, Riley went to see Star at his 47th Street location and Star expressed extreme displeasure because he had learned that the robbery team had left blood at the scene. Nevertheless, Riley displayed to Star the stolen wares and Star purchased one or more items. (Tr. at 305)

The Supreme Court has instructed that in examining whether venue is constitutionally proper, the Court should examine the nature of the crime and then determine location of the acts constituting the crime. See United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999) ("[A] court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.") The nature of a crime may be such that it occurs only in one location and is considered "unitary". Id. at 281. However, conspiracy is not a unitary crime and venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by a co-conspirator. "[V]enue may properly be laid in the district in which the conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators." Rosa, 812 F.2d at 816. A crime "begun in one district and completed in another, or committed in more than one district, may

be . . . prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

The facts of Rodriguez-Moreno are useful to consider. There, the defendant was charged with a section 924(c)(1) offense in the District of New Jersey based upon the use and carrying of a gun in the course of a conspiracy to kidnap. 526 U.S. at 279-280. The defendant did not come into possession of the gun and did not use it until he and the kidnap victim left New Jersey and arrived at a home in Maryland. Id. at 277. In concluding that venue was proper in the District of New Jersey, the Court observed that "[i]t does not matter that respondent used the .357 magnum revolver . . . only in Maryland because he did so 'during and in relation to' a kidnapping that was begun in Texas and continued in New York, New Jersey, and Maryland. In our view, § 924(c)(1) does not define a 'point in time' crime offense when a firearm is used during and in relation to a continuing crime of violence." Id. at 281.

Here, the conspiracy to commit a robbery at Thistle Lane was hatched at Star's place of business in this District with the transmittal of the address and phone number of the Warren Township, New Jersey residence. Riley and Speed agreed to proceed and made the decision to bring guns because they could not be positive that no one would be at home. The jury could properly infer from their past practices and their decision to bring guns that they had decided in advance to proceed with the home invasion at Thistle Lane, even if, upon arrival, they encountered one or more of the occupants. Riley and Speed carried their guns through this District on their way from Long Island to New Jersey. The jury could reasonably believe that Speed displayed his weapon to intimidate Silva into complying with his directives. After the robbery, Riley returned to this District to meet with Star and fence

the stolen merchandise. The conspiracy to commit the robbery was itself a "crime of violence." <u>See</u> <u>United States v. Elder</u>, 88 F.3d 127, 129 (2d Cir. 1996) ("We have held in several circumstances that conspiracy is itself a crime of violence when its objectives are violent crimes or when its members intend to use violent methods to achieve its goals."), <u>cert. denied</u> <u>sub</u> <u>nom.</u>, <u>Elder v. Dodrill</u>, 541 U.S. 1052 (2004).

The conspiracy to commit robbery was a continuing "crime of violence" for section 924(c)(1) purposes, and that crime began and ended at Joe Star's place of business in this District and included the transportation of the gun from the Eastern District of New York, through this District to the District of New Jersey.[3]

Separate from the foregoing analysis, I have also considered the <u>Reed</u> factors as applied to this case. <u>See</u> <u>Ramirez</u>, 420 F.3d at 139 (citing <u>United States v. Reed</u>, 773 F.2d 477, 481 (2d Cir.1985)). "[W]hen venue may properly lie in more than one district under a continuing offense theory, we should . . . ask 'whether the criminal acts in question bear 'substantial contacts' with any given venue.'" <u>Id.</u> Although "the substantial contacts test is not a 'formal constitutional test,' a court should consider whether that test is met in order to determine whether a given venue is 'unfair or prejudicial' to the defendant." <u>Id.</u> at 143. The <u>Reed</u> "test takes into account four main factors: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding. <u>United States v. Saavedra</u>, 223 F.3d 85, 93 (2d Cir. 2000), <u>cert.</u>

---

[3] Viewing the facts in a light most favorable to the government, the gun was "carried" and "possessed" in this District. The carrying and possession of the gun was integral to the robbery because the defendant contemplated the possibility that the robbery would go forward even if someone was home. (Tr. 290) Nevertheless, I need not decide whether the carrying, possession and transport of the gun through this District would have sufficed to support venue if the only "crime of violence" supporting the 924(c)(1) charge had been robbery, as distinguished from conspiracy to commit robbery.

denied <u>sub</u> <u>nom.</u>, <u>Rodriguez v. United States</u>, 532 U.S. 976 (2001).

   The crime charged in Count Three required the carrying and use of the gun during and in relation to the crime of violence <u>or</u> the possession of the gun in furtherance of a crime of violence; here the possession and carrying occurred in both Districts, although the use and brandishing occurred in the District of New Jersey. The "crime of violence" component of the 924(c)(1) offense—the conspiracy to commit robbery—originated in this District and would have been complete even if the defendants had been intercepted and arrested on May 20, 1999 before crossing the border between this District and the District of New Jersey. As to the third <u>Reed</u> factor, the effect of the crime was experienced in New Jersey where the gun was brandished to intimidate Ms. Silva and also in this District where stolen merchandise seized through the brandishing of the gun was sold.

   I conclude that the fourth <u>Reed</u> factor—the suitability of the venue for accurate fact finding—weighs strongly in the government's favor. It was important to accurate fact finding that defendant's participation in a continuing criminal enterprise be brought before a single fact finder. The indictment charged as racketeering acts robberies or conspiracies to commit robberies that were alleged to have taken place in this District and the Districts of Connecticut and New Jersey. To have tried the Warren Township robbery and conspiracy to commit robbery as a racketeering act as part of the RICO counts (Counts One and Two) with venue unchallenged in this District and to have separately tried the section 924(c)(1) count in another district would have undermined the interest of "accurate factfinding". Two juries would have been required to deliberate on the "conspiracy to commit robbery" in one trial as a

-9-

one trial as a racketeering act and in the other trial as a "crime of violence", an element of the 924(c)(1) charge. There would have been the attendant burden on a victim, other witnesses and the parties. I am unable to discern any tangible hardship or prejudice to the defendant caused by the prosecution in this District. See Ramirez, 420 F.3d at 143. Of course, consideration of judicial economy, hardship or prejudice can never supplant the constitutionally-based venue requirements. Considering all of the Reed factors, I conclude that the criminal acts have "substantial contacts" with this District.

CONCLUSION

The motion for a judgment of acquittal is denied.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
    January 25, 2006