UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROBERT SPEED,

                              Petitioner,                04 cr 336 (PKC)

        -against-                                        ORDER


UNITED STATES OF AMERICA,

                              Respondent.
-----------------------------------------------------------x

CASTEL, U.S.D.J.:

        Robert Speed moves to reduce his sentence pursuant to 18 U.S.C. §

3582(c)(1)(A).  (Doc 121.)  Speed is serving a sentence of principally 420 months' imprisonment

and is incarcerated at the Federal Correctional Institution at Fort Dix, New Jersey.  He has served

approximately 230 months of this sentence, and has a projected release date of November 29,

2031.

        Because an appeal from the denial of Speed's motion to vacate, set aside, or

correct his conviction and sentence pursuant to 28 U.S.C. § 2255 is pending, this Court arguably

lacks jurisdiction to grant a reduction in sentence.  See Griggs v. Provident Consumer Discount

Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal . . . confers jurisdiction on the

court of appeals and divests the district court of its control over those aspects of the case

involved in the appeal."); U.S. v. Ransom, 866 F.2d 574, 575 (2d Cir. 1989) (noting that this

"rule applies in criminal cases").

        Rule 37(a), Fed. R. Crim. P. provides in relevant part that "[i]f a timely motion is

made for relief that the court lacks authority to grant because of an appeal that has been docketed

and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state

either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  The Advisory Committee Notes to Rule 37 "anticipate[] that Criminal Rule 37 will be used primarily if not exclusively" for three types of motions including those made under 18 U.S.C. § 3582(c).  See United States v. Skelos, No. 15 cr 317 (KMW), 2020 WL 2508739, at *2 (S.D.N.Y. May 15, 2020) (denying a compassionate release motion pursuant to Rule 37 where defendant filed a notice of appeal from his sentence and judgment); United States v. Martin, No. 18 cr 834 (PAE), 2020 WL 1819961 (S.D.N.Y. Apr. 10, 2020) (same).

For reasons that will be explained, the Court states, pursuant to Rule 37(a)(3), that it would deny Speed's motion on the merits if jurisdiction were restored to the district court.

DISCUSSION

Section 3582(c)(1)(A) of title 18 provides that "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court has broad discretion and may consider all circumstances in combination or isolation.  United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A); see also United States v. Roney, 2020 WL 6387844, at *1 (2d Cir. Nov. 2, 2020) ("Prior to reducing a defendant's term of imprisonment, however, a district court must consider the factors set forth in section 3553(a) to the extent they are applicable.") (summary order; quotation marks omitted).

- 2 -

Speed submitted a request for sentence reduction to the Warden of FCI Fort Dix in April 2020.  (Doc 123 at 2.)  On May 22, 2020, the request was denied.  (Id.)  He satisfies the requirement of administrative exhaustion.  Upon release, Speed plans to live in Snellville, Georgia with his brother-in-law.  (Doc 121 at 12.)

Speed, who is presently 53 years old, argues that the present conditions at FCI Fort Dix put him at a heightened health risk.  In November 2020, Speed contracted COVID-19, though it appears he was spared the worst of the symptoms.  (Doc 121 at 4, 9.)  In a letter addressed to the Court, Speed states that although he suffers from "severe shortness of breath," his "lungs are not being fully attacked."  (Doc 121 – Ex. E.)  His motion notes the potential for reinfection and the conditions he faces at FCI Fort Dix.  Though Fort Dix suffered an outbreak of the virus in late 2020 and early 2021, the situation has improved since then.  BOP currently reports 3 infected inmates and 41 infected staff members.[1]  The prison has consulted with several organizations on implementing a BOP plan to mitigate the COVID-19 risk.  See Wragg v. Ortiz, 462 F. Supp. 3d 476, 485 (D. N.J. 2020).

The CDC has stated that "[c]ases of reinfection with COVID-19 have been reported, but remain rare," and advises persons who have been infected to maintain protective measures.[2]  The CDC also has stated that the "[p]resence of antibodies following natural infection may produce some level of protection from re-infection. . . ."[3]  At present, risk of reinfection is unquantifiable.

The CDC also advises that "[w]hile most persons with COVID-19 recover and return to normal health, some patients can have symptoms that can last for weeks or even months

---

[1] https://www.bop.gov/coronavirus/
[2] https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html
[3] https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antibody-tests-guidelines.html#anchor_1590264247573

after recovery from acute illness."[4]  Speed's medical records do not show any severe side effects from the virus, and he has not asserted any pre-existing health conditions that would place him at an increased risk of severe symptoms.

Speed notes that if he were sentenced for the same conduct today, the Guidelines range would be lower.  He argues that this, in combination with all other circumstances, including his conduct while incarcerated, constitute additional extraordinary and compelling reasons for relief.  The government does not contest that Speed would face a lower Guidelines recommendation had he been sentenced today due to adjusted criteria to qualify as a "Career Offender."  At the time that Speed was sentenced, his Guidelines range was 408 to 489 months' imprisonment, including a seven-year mandatory minimum under 18 U.S.C. § 924(c).  Today, this range would be 346 to 411 months' imprisonment.  The Guidelines Amendment reducing this range, Amendment 798, is not listed as a retroactive amendment that would entitle Speed to relief under 18 U.S.C. § 3582(c)(2).  U.S.S.G. § 1B1.10(a)(1), (a)(2)(A), (d); see e.g., United States v. Carter, 830 F. App'x 783 (7th Cir. 2020); United States v. Pryor, 824 F. App'x 652 (11th Cir. 2020); United States v. Adkins, 883 F.3d 1207 (9th Cir. 2018).

Taking full account of Speed's medical condition, the conditions at F.C.I. Fort Dix, the lower Guidelines that would apply today, his post-conviction conduct and the section 3553(a) factors, the motion will be denied.

On November 9, 2005, a jury convicted Speed of seven counts of an eight-count indictment charging him with participating in a two-person violent home invasion crew operating in three states with well over one hundred burglaries and/or robberies.  (Superseding Indictment (Doc 55); Trial Tr. (Doc 114, Ex. 4) at 1811–16.)  Speed was convicted on Count One, a

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html

substantive racketeering charge, in violation of the Racketeer Influenced and Corrupt

Organizations ("RICO") Act, 18 U.S.C. § 1962(c); Count Two, racketeering conspiracy, in

violation of 18 U.S.C. § 1962(d); Count Three, possession of a firearm in furtherance of a crime

of violence, in violation of 18 U.S.C. 924(c)(1)(A)(ii) and 2; Count Four, unlawful possession of

a firearm, in violation of 18 U.S.C. § 922(g)(1); Count Five, conspiracy to transport stolen goods

in interstate commerce and to sell stolen goods, in violation of 18 U.S.C. § 371; Count Six,

interstate transportation of stolen property, in violation of 18 U.S.C. § 2314 and 2; and Count

Seven, possession and sale of stolen property, in violation of 18 U.S.C. § 2315 and 2.

(Presentence Investigation Report ("PSR") (Doc 114, Ex. 1).)

Speed was a member of a two-man team that carried out violent robberies of

homes and businesses across Long Island, New Jersey, and Connecticut.  (PSR at ¶ 33.)  Speed's

coconspirator testified that he had committed over 160 robberies, with Speed participating in at

least 90 percent of them.  (Id. at ¶ 34.)  Several of the robberies involved threats of violence and

brandished firearms.  Victims were tied up, punched, sprayed with pepper spray, dragged, and/or

struck with weapons.  (Id. at ¶¶ 33–58.)

Speed was sentenced on May 19, 2006 to 420 months' imprisonment.  Over a

dozen victims testified at the trial.  The Court explained that the sentence was deserved for

"substantially harm[ing] the childhood innocence of several of his victims and [] physically

injur[ing] and terroriz[ing] others."  (Sentencing Tr. at 62.)  The Court recalled testimony of one

victim who was "tied up and gagged."  (Id. at 63.)  Upon encountering this victim's family,

Speed "threatened to kill the son" and "threatened his wife with having her fingers cut off."  (Id.

at 63.)  Another victim "required stiches to her head" after she was "hit with a butt of a gun."

(Id.)  Speed once "tied up an elderly woman who was caring for her husband who was receiving

oxygen in his bed."  (Id.)  A fourth victim was "tied up, bruised, had her eyeglasses broken, her home ransacked and her diamond wedding ring among other items taken from her."  (Id. at 64.)  A fifth victim was "pushed down, tied up, her mouth taped" while "[s]omebody sat on her back and twisted her neck. . . ."  (Id.)  Two more victims, both under the age of fifteen, were punched, tied up, and threatened with being kidnapped.  (Id.)  Speed's crimes were committed with a reckless depravity that inflicted trauma on children and adults.

Speed's robberies often involved the brandishing of firearms.  (See e.g., PSR at ¶¶ 33, 35-37,  40, 41, 49, 52, 61.)  In a November 1997 robbery of a business, Speed placed his firearm on a victim's head and pulled the trigger, but the gun fortunately did not fire.  (PSR at ¶ 37.)  In an April 1998 robbery of a gas station, an employee tried to run away.  Speed grabbed the employee and hit him in the head with the butt of a firearm.  (Id. at ¶ 40.)  The charged crimes were not Speed's first experiences with robbery.  In 1986, Speed was convicted of a robbery in state court, in which he brandished a firearm and held up a man and woman exiting a vehicle outside of their Nassau County home.  (Id. at ¶ 184.)  Speed hit the woman in the face with the butt of his firearm.  (Id.)  The robberies underlying his federal conviction were committed while he was on work release following his incarceration for the 1986 robbery conviction.

With respect to the lower Guidelines range that would apply today, under Brooker, a nonretroactive intervening change in the law may constitute an extraordinary and compelling reason to reduce a sentence.  However, such a change does not mandate a finding of extraordinary and compelling reasons.  See e.g., Carter, 830 F. App'x at 785 (finding that the same amendment that Speed cites, amendment 798, was not an extraordinary and compelling reason for a sentence reduction); see also United States v. Lorenzo, No. 03-cr-1256, 2021 WL

734984, at *3 (S.D.N.Y. Feb. 24, 2021) (Keenan, J.) (similar holding for a different intervening change in the law); Musa v. United States, _ F. Supp. 3d _, 2020 WL 6873506, at *7 (S.D.N.Y. Nov. 23, 2020) (Sullivan, J.) (same).  In Musa, Judge Sullivan explained what while "the Court's discretion is obviously not constrained by the non-retroactive nature of the changes . . . [defendant] has failed to identify additional, individualized factors justifying his release."  Id. at *7.  The individualized factors advanced by Speed do not warrant an extraordinary and compelling reason to reduce his sentence.  His extended trail of violent crimes counsels against a reduction in sentence.

The Court has also considered the need to protect the public from further crimes of Speed.  A June 2019 report issued by the United States Sentencing Commission concluded that "[n]early 40 percent (39.3%) of firearms offenders released after the age of 50 recidivated, which is almost twice as high as the recidivism rate for non-firearms offenders (20.6%) released after age 50."[5]  As noted, Speed is currently age 53.  Speed also did not accept responsibility for his violent actions at his sentencing, but does so now in a rather perfunctory manner, in the second and third paragraphs of his letter to the Court.  The Court has weighed all of the other section 3553(a) factors as well, including the seriousness of the offense, the need for just punishment, and Speed's history and characteristics.  The Court has considered the absence of a disciplinary record, the many educational courses he has taken, his age, health and conditions at FCI Fort Dix.  Taking all considerations both in isolation and in combination, the Court concludes that Speed has not demonstrated an extraordinary and compelling reason to reduce his sentence.

---

[5] Recidivism Among Federal Firearms Offenders, United States Sentencing Commission, at 22 https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf (June 2019).

CONCLUSION

As the Court's indicative ruling, it would deny Speed's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) if jurisdiction were returned to the district court.  The Clerk is directed to terminate the relevant motion (Doc 121).


SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 22, 2021